UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARK HORSTMEYER,

     Plaintiff,

v.                                                                        Case No:   2:14-cv-577-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Mark M. Horstmeyer's Complaint (Doc. 1) filed on October 1, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **affirmed in part, and reversed and remanded in part** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.      Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

**A.      Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.    Procedural History

On June 28, 2010, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of May 1, 2006.  (Tr. at 74-75, 119-132). Plaintiff's applications were denied initially on December 15, 2010, and on reconsideration on March 28, 2011.  (Tr. at 74-77).  A hearing was held before Administrative Law Judge ("ALJ") Larry J. Butler on August 29, 2012.  (Tr. at 25-58).  The ALJ issued an unfavorable decision on May 6, 2013.  (Tr. at 12-20).  The ALJ found Plaintiff not to be under a disability from May 1, 2006, through the date of the decision.  (Tr. at 20).

On August 5, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-5).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on October 1, 2014. This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 17).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]   An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after

whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2008. (Tr. at 14).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2006, the alleged onset date.  (Tr. at 14).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  bilateral knee osteoarthritis, scoliosis, myofascial pain syndrome, and degenerative joint disease.  (Tr. at 4).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 16).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work.  (Tr. at 16).  The ALJ found that Plaintiff had no past relevant work.  (Tr. at 19).  After considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr.

---

January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

at 19). The ALJ concluded that Plaintiff was not under a disability from May 1, 2006, through the date of the decision. (Tr. at 20).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### II.    Analysis

On appeal, Plaintiff raises three issues. As stated by Plaintiff, they are:

1)   The ALJ erred by finding that Horstmeyer does not have a severe mental impairment within the meaning of the Act because substantial evidence does not support the

conclusion that the impairments are only a "slight abnormality" with a minimal effect on Horstmeyer's ability to work.

2) The ALJ erred by failing to obtain testimony from a vocational expert and, instead, relied on a mechanical application of the Medical-Vocational Guidelines.

3) The ALJ did not provide adequate reasons for rejecting the opinions of every acceptable medical source regarding the severity of Horstmeyer's impairments and the presence of non-exertional limitations.

The Court addresses each issue in turn below.

**A.  Severe Impairments**

Plaintiff argues that the ALJ erred at step two of the sequential evaluation by failing to find anxiety and depression to be severe impairments.  Moreover, Plaintiff asserts that by failing to find Plaintiff's mental limitations severe, he did not account for them in the RFC assessment. The Commissioner responds that the ALJ properly considered Plaintiff's mental limitations at step two.

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months.  *See* 20 C.F.R. §§ 404.1505(a).  This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not.  *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three.  *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

The ALJ did not include a finding that Plaintiff's anxiety or depression was a severe impairment at step two of the sequential evaluation.  The ALJ did find that Plaintiff had the severe impairments of bilateral knee osteoarthritis, scoliosis, myofascial pain syndrome, and degenerative joint disease.  Even if the ALJ erred in failing to find Plaintiff's mental conditions to be severe limitations, the error may be harmless if the ALJ considered Plaintiff's severe and non-severe impairments in combination in reaching an RFC determination.  *Gray*, 550 F. App'x at 854 (Even if ALJ failed to include a severe impairment at step two, the error was harmless if the ALJ considered all impairments whether severe or not, at step three and in assessing claimant's RFC.).

In reviewing the decision, the Court determines that the ALJ did consider Plaintiff's records relating to Plaintiff's anxiety and depression.  The ALJ noted that Plaintiff had a history of medication treatment for both anxiety and depression.  (Tr. at 14).  The ALJ determined that these conditions were not severe limitations if Plaintiff followed treatment recommendations and his prescription regimen.  (Tr. at 14).  The ALJ reviewed Plaintiff's medical history relating to his anxiety and depression.  (Tr. at 15-16).  Beginning in May 2008, Plaintiff reported feeling stressed due to the death of his cat.  (Tr. at 15).  Plaintiff was prescribed Xanax with good

results. (Tr. at 15). In 2009, Plaintiff's stress level increased as a result of an arrest, and was prescribed more Xanax. (Tr. at 15). The results of a consultative examination in November 2010 showed Plaintiff to have situational stress and depression that was responsive to medication treatment. (Tr. at 15).

Plaintiff saw a pain specialist in January 2011 who determined that Plaintiff was on too high a dosage of Xanax without a psychiatric evaluation. (Tr. at 15). Later records showed Plaintiff to have mild anxiety, and that he insisted on taking Xanax rather than other medications. (Tr. at 15). Plaintiff returned in September 2012 claiming that he was still on Xanax and that other medications were not helpful. (Tr. at 15). Plaintiff did not return again for treatment. (Tr. at 15). The ALJ considered the evaluation of the psychologist who saw Plaintiff on December 1, 2010 and who found him to have severe anxiety and depression as well as probable cognitive deficits, but the ALJ gave little weight to this opinion. (Tr. at 15). The ALJ noted that this examiner found Plaintiff to have some tangential and obsessive and phobic tendencies that could interfere with his decision-making. (Tr. at 15). The ALJ found this opinion to be inconsistent with the medical record as a whole. (Tr. at 15).

The ALJ also reviewed Plaintiff's mental health impairments in combination with Plaintiff's physical impairments and pain management. The ALJ noted that Plaintiff's pain management physician, Jonathan Daitch, M.D., determined that Plaintiff should detox from the high levels of Xanax he was taking, especially because Plaintiff had failed to be evaluated by a psychiatrist. (Tr. at 17). The ALJ noted that in November 2011, Plaintiff was negative for anxiety and depression. (Tr. at 18).

The ALJ considered Plaintiff's alleged mental impairments in combination with his other impairments. The ALJ reviewed Plaintiff's mental health treatment records from mental health

professionals as well as his mental health records from the medical providers who did not specialize in mental health treatment.  The Court recognizes that Plaintiff disagrees with the ALJ's finding that anxiety and depression were not severe impairments.  The Court acknowledges that the ALJ did not find Plaintiff's mental impairments to be severe.  However, he did consider Plaintiff's mental impairments in combination with Plaintiff's other impairments. Accordingly, even if the ALJ erred in failing to find Plaintiff's mental impairments severe, the error was harmless because the ALJ found Plaintiff to have other severe impairments, and the ALJ considered Plaintiff's severe and non-severe impairments in combination.  Accordingly, even if the ALJ erred in failing to find Plaintiff's mental impairments severe, the error was harmless.[2]

### B.  Weight of physicians' opinions

Plaintiff argues that the ALJ erred in rejecting the opinions of Rebecca Ferrer, Psy.D., Lynda Walls, Ph.D., and Val Bee, Psy.D. concerning Plaintiff's mental health, and the ALJ erred in rejecting the opinion of Debra Roggow, DO regarding Plaintiff's physical impairments.  In response, the Commissioner argues that the ALJ properly considered the opinions of Dr. Ferrer, Dr. Walls, and Dr. Bee and found that these non-treating health care providers' opinions were not consistent with the record as a whole.  Moreover, the Commissioner contends that the ALJ afforded proper weight to Dr. Roggow's opinion.

At the fourth step in the evaluation process, the ALJ is required to determine a plaintiff's RFC and based on that determination, decide whether a plaintiff is able to return to

---

[2]  Although unclear, it appears that Plaintiff is also arguing that by failing to consider Plaintiff's mental impairments severe, the ALJ erred in failing to include any mental limitations in his RFC finding.  This issue will be addressed *infra* with the issue of whether the ALJ rejected the opinions of every acceptable medical source.

his previous work.  *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The

determination of a plaintiff's RFC is within the authority of the ALJ, and along with the

claimant's age, education, and work experience, the RFC is considered in determining whether

the claimant can work.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Weighing

the opinions and findings of treating, examining, and non-examining physicians is an integral

part of the ALJ's RFC determination at step four.  *See Rosario v. Comm'r of Soc. Sec.*, 877 F.

Supp. 2d 1254, 1265 (M.D. Fla. 2012).

      "The Secretary must specify what weight is given to a treating physician's opinion and

any reason for giving it no weight, and failure to do so is reversible error."  *MacGregor v.*

*Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held

that whenever a physician offers a statement reflecting judgments about the nature and severity

of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant

can still do despite his or her impairments, and the claimant's physical and mental restrictions,

the statement is an opinion requiring the ALJ to state with particularity the weight given to it

and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir.

2011).  Without such a statement, "it is impossible for a reviewing court to determine whether

the ultimate decision on the merits of the claim is rational and supported by substantial

evidence."  *Id.* (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

      "Generally, the opinions of examining or treating physicians are given more weight than

non-examining or non-treating physicians unless 'good cause' is shown."  *Poellnitz v. Astrue*,

349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5) and *Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  A doctor's opinion may be discredited when it

is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the

doctor's own medical records. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error." *Id.* (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

Even though examining doctors' opinions are not entitled to deference, an ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). To evaluate a medical source, the same criteria are used whether the medical source is a treating or non-treating doctor, with the following elements to be considered: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of any treatment relationship; (3) supportability; (4) consistency with other medical evidence in the record; and (5) specialization." *Id.* (citations omitted).

### 1. Dr. Ferrer's opinion

On December 1, 2010, Rebecca Ferrer, Psy.D. examined Plaintiff and provided a Mental Status Evaluation. (Tr. at 232-36). Dr. Ferrer noted that Plaintiff reported no psychiatric outpatient treatment or hospitalization. (Tr. at 232). Plaintiff reported once his medications wear off, he is unable to sleep. (Tr. at 232). Plaintiff reported feelings of sadness, hopelessness, worthlessness, crying spells, diminished self-esteem, loss of usual interests, irritability, displayed psychomotor retardation, and being always in a state of panic. (Tr. at 232). Plaintiff attributed some of these feeling with loss of physical abilities and some to the lack of money. (Tr. at 232). Plaintiff claims to obsess about the future death of his mother. (Tr. at 232). Dr. Ferrer found

Plaintiff to have some cognitive deficiencies such as short and long-term memory deficits, receptive language problems, and problems with organization, abstracting, planning, and sequencings, and not always being oriented to person, place, and time. (Tr. at 233). Dr. Ferrer found Plaintiff to be generally cooperative, but he had an "odd manner of relating socially leading to a poor overall presentation." (Tr. at 233).

Dr. Ferrer found Plaintiff's affect to be anxious and his mood dysthymic. (Tr. at 234). Her findings included that Plaintiff's attention and concentration seemed to be mildly to moderately impaired, which Dr. Ferrer could not determine whether that was attributable to Plaintiff's anxiety relating to the evaluation or his limited intellectual functioning. (Tr. at 234). As with his attention and concentration, Dr. Ferrer found Plaintiff's recent and remote memory skills to have some deficits. (Tr. at 234). Dr. Ferrer noted that Plaintiff's cognitive functioning seemed to be in the below average to borderline range, finding that his history indicated he only completed the 9th grade and was in special education classes his entire academic career. (Tr. at 234). According to Dr. Ferrer, the information he possessed was limited during the exam. (Tr. at 234). Dr. Ferrer found that Plaintiff was able to dress, bathe, and groom himself, make simple meals in the microwave, but was not able to manage money or drive, and was dependent on his mother financially and socially. (Tr. at 235).

Dr. Ferrer concluded that Plaintiff would be able to understand and follow simple directions and instructions, and would most likely need supervision to complete simple tasks. (Tr. at 235). Moreover, Plaintiff would not be able to complete complex tasks, would have difficulty maintaining adequate attention and concentration, and would have difficulty learning new tasks and new material. (Tr. at 235). At times, Dr. Ferrer found that Plaintiff would be able to make appropriate decisions; however, at other times his "tangential, obsessive, and phobic

tendencies of things, interfere with good decision-making." (Tr. at 235).  Dr. Ferrer found

Plaintiff unable to relate well with others due to his odd manner of presentation, and his manner

of speaking tangentially.  (Tr. at 235).  Dr. Ferrer determined that Plaintiff had difficulty

appropriately dealing with stress due to his depression, anxiety, and phobias.  (Tr. at 235).  Dr.

Ferrer opined that Plaintiff's difficulties are mostly caused by the presence of cognitive deficits

as well as severe anxiety and depression.  (Tr. at 235).  Dr. Ferrer diagnosed Plaintiff with major

depressive disorder, moderate without psychotic features; generalized anxiety disorder; apparent

cognitive deficits; inability to live independently; and no social support outside of his mother.

(Tr. at 236).  Dr. Ferrer recommended that Plaintiff engage in individual psychotherapy to help

him learn coping skills and manage his anxiety, as well as determine if medications would be

beneficial.  (Tr. at 236).  Dr. Ferrer determined Plaintiff's prognosis was guarded due to his age,

severity of his psychiatric symptoms, and lack of support with the exception of his mother.  (Tr.

at 236).  Dr. Ferrer found Plaintiff would need assistance in managing funds.  (Tr. at 236).

### 2.  Dr. Walls' opinion

On December 15, 2010, non-examining medical professional Lynda Walls, Ph.D.

completed a Mental Residual Functional Capacity Assessment.  (Tr. at 237-254).  Dr. Walls

found that Plaintiff was moderately limited:  in his ability to understand and remember detailed

instruction; in his ability to maintain attention and concentration for extended periods; and in his

ability to interact appropriately with the general public.  (Tr. 237-38).  Dr. Walls determined that

Plaintiff is able to remember simple job procedures, may need repetition, and may show more

difficulties in this area on some occasions and not on others depending on his anxiety level.  (Tr.

at 239).  Dr. Walls recommended that information be given to Plaintiff in smaller portions to

accommodate for his attentiveness ability.  (Tr. at 239).  Regarding interpersonal interactions,

Dr. Walls found that Plaintiff may have problems in this area due to his anxiety, and should be expected to work best when working alone, and with little change in duties and locations.  (Tr. at 239).

On December 15, 2010, Dr. Walls completed a Psychiatric Review Technique and determined that Plaintiff had affective disorders and anxiety-related disorders.  (Tr. at 241).  Dr. Walls found that Plaintiff's depression was effectively controlled by medications. (Tr. at 244).  Dr. Walls also found that Plaintiff had an intermittent increase in problems with severe anxiety and panic disorder.  (Tr. at 246).  Dr. Walls found that Plaintiff had mild restrictions in activities of daily living, moderate difficulties in maintaining social functions, and moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. at 251).  Dr. Walls concluded that any severe levels of Plaintiff's mental health disorders are expected to respond to effective treatment as had been the case in the past.  (Tr. at 253).

### 3.  Dr. Bee's opinion

Val Bee, Psy.D. affirmed the Psychiatric Review Technique and Mental Residual Functional Capacity Assessment dated December 15, 2010.  Both forms were both completed by Dr. Walls.  (Tr. at 267).

### 4.  ALJ's review of the opinions of  Dr. Ferrer, Dr. Walls, and Dr. Bee

The ALJ does not mention Dr. Ferrer or Dr. Walls by name, and gives little weight to their opinions.  (Tr. at 15).  The ALJ does not appear to address Dr. Bee's opinion that adopts Dr. Walls' opinion.[3]  The ALJ summarized Dr. Ferrer's opinion as follows:

> The undersigned gives little weight to the psychologist who evaluated the claimant on December 1, 2010 and felt that the claimant had severe anxiety and depression as well as probable cognitive deficits such that he would need supervision

---

[3]  The ALJ generally references all of the exhibits in his Decision by citing to them as "(1F – 17F)," but never specifically refers to Dr. Bee's opinion.  (*See* Tr. at 15).

performing simple tasks and would have difficulty maintaining attention and concentration.  It was also felt that he had some tangential and obsessive and phobic tendencies that could interfere with good decision-making.

(Tr. at 15).  After that brief review, the ALJ determined that Dr. Ferrer's opinion was inconsistent with the medical records.  (Tr. at 15).  The ALJ supported this statement by indicating that Plaintiff received no psychiatric outpatient treatment or hospitalizations, had been resistant to receiving psychiatric treatment, his anxiety is primarily associated with particular stressors, and his anxiety is well controlled with medication as shown by his ability to perform activities of daily living such as reading and working out.  (Tr. at 15).  The ALJ concluded that Plaintiff had no more than mild limitations in activities of daily living, and in maintaining concentration, persistence, pace, or social functioning.  (Tr. at 15).  The ALJ stated that he "gives little weight to the DDS psychologist [Dr. Walls] who opined at Exhibits 7F and 8F that the claimant had moderate mental limitations (Exhibits 1F-17F)."  (Tr. at 15).

### 5. Analysis

The ALJ determined that Dr. Ferrer's opinion should be afforded less weight, first because Plaintiff had not received psychiatric outpatient treatment or hospitalizations and was resistant to treatment.  When making her diagnosis, Dr. Ferrer was aware that Plaintiff had no psychiatric outpatient treatment or hospitalizations and noted it in her Mental Status Evaluation. (Tr. at 232).  The fact that Plaintiff had not received mental health outpatient or in-patient treatment did not prevent Dr. Ferrer from making her recommendations as to Plaintiff's limitations, including but not limited to Plaintiff only being able to perform simple tasks with the likely need of supervision to complete them, having difficulty maintaining attention and concentration, having difficulty learning new tasks, and having an inability to adequately deal with other people.  Dr. Walls was also aware of Plaintiff's lack of prior mental health treatment

when determining that Plaintiff was moderately limited in certain areas.  The Court finds that the justification for giving little weight to the opinions of Dr. Ferrer and Dr. Walls due to Plaintiff not having prior in-patient or out-patient mental health treatment is not supported by substantial evidence because both doctors knew of Plaintiff's prior mental health records and determined their opinions knowing this fact.

Next, the ALJ afforded the opinions of Dr. Ferrer little weight, asserting that Plaintiff's anxiety was primarily associated with particular stressors.  Dr. Ferrer addressed the issue of stress in her Mental Status Evaluation.  Dr. Ferrer determined that Plaintiff had difficulty appropriately dealing with stress.  (Tr. at 235).  Dr. Walls also addressed the issue noting that Plaintiff's anxiety flares up when Plaintiff has new stressors.  (Tr. at 253).  Even though Plaintiff's anxiety may be triggered by particular stressors, the ALJ failed to justify giving little weight to the opinions of both Dr. Ferrer and Dr. Walls, who both address this issue.  Plaintiff has a long history of anxiety and depression throughout the records, and was prescribed medication to control the anxiety.  The Court determines that affording little weight to the opinions of Dr. Ferrer and Dr. Wall because Plaintiff's anxiety may be associated with particular stressors is not supported by substantial evidence in the record.

Lastly, the ALJ found that Plaintiff's anxiety is well-controlled with medication as shown by his ability to perform activities of daily living, like reading and working out.  On March 5, 2010, a nurse completed an Office Note indicating that Plaintiff should continue to do activities that "he enjoys, such as reading and working out to keep his quality of life at a good level."  (Tr. at 203).  Dr. Ferrer found that Plaintiff was able to dress, bathe, and groom himself, and was able to prepare simple meals in a microwave, but also found Plaintiff was unable to manage money, drive, or take public transportation.  (Tr. at 235).  Dr. Walls found Plaintiff's restriction in

activities of daily living mild, but found Plaintiff had moderate limitations in maintaining social functioning.  (Tr. at 251).  Dr. Ferrer and Dr. Walls considered Plaintiff's abilities concerning his activities of daily living in reaching their conclusions.  Neither Dr. Ferrer nor Dr. Walls made a determination that Plaintiff's anxiety was well-controlled based on his ability to perform activities of daily living.  The ALJ appears to rely heavily on one note in one treatment report completed by a nurse that indicated that Plaintiff reads and works out to justify affording the opinions of Dr. Ferrer and Dr. Walls little weight.  One treatment note from one source does not support this conclusion.  The Court determines that the ALJ's decision is not supported by substantial evidence in discounting the opinions of Dr. Ferrer and Dr. Walls as to Plaintiff's level of anxiety as shown by his activities of daily living.

The ALJ failed to accord Dr. Ferrer, an examining physician, controlling weight.  To justify not according an examining doctor controlling weight, an ALJ must articulate specific reasons that are substantially supported in the record.  *See Poellnitz v. Astrue*, 349 F. App'x at 502.  The ALJ failed to set forth substantial reasons to give little weight to the opinion of examining doctor, Dr. Ferrer, or in justifying his decision by supporting his decision with substantial evidence in the record.  The Court reviewed the opinions of Dr. Ferrer and Dr. Walls and they are not inconsistent with the medical records as a whole concerning Plaintiff's mental status.  The ALJ's decision to afford the opinions of Dr. Ferrer and Dr. Walls little weight is not supported by substantial evidence, and this matter will be remanded.  Additionally, the ALJ failed to mention Dr. Bee's report that adopted Dr. Walls' findings.  In finding that this matter must be remanded, the Court will also require the Commissioner to consider Dr. Bee's opinion and whether the ALJ properly evaluated the opinion of Dr. Roggow.

**C.  Other issues**

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the ALJ properly considered all of the relevant medical evidence in the record.  Because the Court found that, upon remand, the ALJ must reevaluate certain medical opinions that contain impairment evidence, and that evidence may impact the Court's analysis of other elements of the ALJ's decision, the Court finds that any ruling on Plaintiff's remaining arguments would be premature at this time.

**D.  Other relief requested by Plaintiff**

Plaintiff requests that the Court order the Commissioner to grant benefits, or alternatively reverse and remand this action.  The Court has determined that this matter must be reversed and remanded for the Commissioner to reconsider certain medical evidence, and whether a vocational expert is needed.  *See Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (A court may award disability benefits "where the Secretary has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.").  Therefore, the Court will reverse and remand this matter rather than award benefits.

Plaintiff also argues that if this matter is remanded, a different ALJ should be assigned to the remanded case.  Plaintiff argues that the ALJ has been subject to discipline by the Agency in handling other cases by Plaintiff's counsel for refusing to provide interpreters at hearing.  In addition, Plaintiff argues that this ALJ has filed a civil suit against the Agency.  This Court cannot consider matters that do not relate to this case in determining whether to remand this action to different ALJ.  *See Roth v. Comm'r of Soc. Sec.*, No. 608-CV-296-ORL-28DAB, 2009 WL 536522, at *8 (M.D. Fla. Mar. 3, 2009).  The issues raised by Plaintiff do not show a bias in

this case and, thus, the Court will not require that the Commissioner appoint a different ALJ on remand.

### III.     Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence as to the step-two determination, and not supported by substantial evidence as to the opinions of the treating, examining, and non-examining doctors, and upon remand the Commissioner should reevaluate all of the medical opinions.  Further, the Commissioner shall reconsider whether a vocational expert is needed.

**IT IS HEREBY ORDERED:**

1)      The decision of the Commissioner is **AFFIRMED IN PART** as to the step-two analysis; and **REVERSED and REMANDED IN PART** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the medical evidence, and whether a vocational expert is needed.

2)      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3)      If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on March 3, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties